**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Albert ROVIARO, Defendant-Appellant.**

**No. 15759.**

United States Court of Appeals Seventh Circuit.

June 28, 1967.

Rehearing Denied Aug. 24, 1967.

---

———◆———

Maurice J. Walsh, John Powers Crowley, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Robert J. Collins and John P. Lulinski, Asst. U. S. Attys., of counsel, for appellee.

Before HASTINGS, Chief Judge, DUFFY, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

Defendant was convicted of conspiring to import and sell narcotic drugs in violation of Section 2 of the Narcotic Drugs Import and Export Act (21 U.S.C. § 174). He was also convicted of using a telephone on two occasions to commit said offense in violation of Section 1403 of the Criminal Code (18 U.S.C. § 1403). A ten-year sentence was imposed on the first count and concurrent five-year sentences on the latter two counts (to be served concurrently with the sentence on the first count). The pertinent facts will be discussed in connection with the various arguments presented by defendant.

*The Indictment Did Not Violate the Fifth and Sixth Amendments.*

Defendant first contends that the indictment did not sufficiently state the nature of the offense. As to Count One, our decision in United States v. Garfoli, 324 F.2d 909 (7th Cir. 1963),

is dispositive. That case also charged a conspiracy in violation of Section 174 of Title 21 of the United States Code. We held it sufficient as a matter of law and so hold with respect to this indictment. Paragraph 1 of Count One contains the names of eleven individuals with whom defendant allegedly conspired. Paragraphs 2 and 3 state that they conspired to procure and sell heroin. These and other allegations sufficiently advised defendant of the nature and cause of the accusation. Wong Tai v. United States, 273 U.S. 77, 80–81, 47 S.Ct. 300, 71 L.Ed. 545; see Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240, a contempt of Congress prosecution, is not to the contrary. In that case, the subject under Congressional inquiry had to appear in the indictment, for an accused could not be guilty of refusing to answer a question of a Congressional committee if it were not pertinent. See 369 U.S. at p. 755, 82 S.Ct. 1038.

■ Likewise, Counts Two and Three of the indictment, charging a violation of Section 1403 of the Criminal Code (18 U.S.C. § 1403), are adequate. Those Counts contain the date and place of the interstate telephone calls made by defendant and charge that the calls were made to violate Section 174 of Title 21. In United States v. Butler, 204 F.Supp. 339 (S.D.N.Y.1962), the court refrained from invalidating a similar indictment. Moreover, under a parallel provision of the Criminal Code (18 U.S.C. § 1952), an indictment resembling Counts Two and Three of this indictment was sustained after scrupulous consideration. Turf Center, Inc. v. United States, 325 F.2d 793, 796 (9th Cir. 1964).

*Sufficiency of Evidence of Defendant's Guilt*

■ Defendant next argues that there was insufficient evidence to sup-

port his conviction. On the contrary, this record shows that he was a major supplier of narcotics. Viewed most favorably to the Government,[1] the evidence showed that defendant had supplied heroin to Orville Drake of Indianapolis, Indiana. In turn Orville Drake sold it to various customers in that area. When Orville Drake died in September 1961, he left his son Fred Drake a shoebox full of heroin, containing enough narcotics for Fred Drake to sell to his customers from October 1961 to June 1962.

Soon after Orville Drake's death, defendant telephoned Fred Drake to inquire whether he was planning to continue his father's business. Drake replied in the affirmative. Defendant also told Drake that Orville Drake had owed him $5,300 from his last "buy". A week later, defendant asked Fred Drake to meet him in a Fowler, Indiana, tavern at 10 P.M. They drove to the outskirts of the town, stopping at a dead-end road. Defendant told his passenger that this was the place where Orville Drake and defendant had met, that he and Fred Drake would meet there from then on, and that Drake could pay the $5,300 debt through his sales of the shoebox heroin.

On December, 11, 1962, in a telephone call from Lansing, Illinois, to Fred Drake in an Indianapolis telephone booth, defendant offered to sell ¼ kilogram of heroin to Drake for $3,300.

In a February 15, 1963, Chicago telephone call from defendant to Fred Drake's Indiana home, defendant offered to sell Drake heroin and requested him to come to Chicago. On the following day in Chicago, defendant told Drake that he had obtained some unsatisfactory heroin (perhaps from Canada through "courier" Eva Neforos [2]) unsuitable for Drake's use. Consequently, defendant promised Drake another shipment of better quality. In a May 1st call, Roviaro again invited Drake to Chicago. How-

---

1. See United States v. Hoffa, 367 F.2d 698, 702–703 (7th Cir. 1966) remanded, 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738.

2. The jury was entitled to disbelieve her denials.

ever, when Drake reached Chicago on May 4th, this subsequent sale was frustrated because defendant's expected source of supply failed to appear with the heroin that evening. Defendant agreed to telephone Drake as soon as he "got some good stuff" and then meet him in Fowler, Indiana.

Many of the foregoing transactions were corroborated by electronic devices used by Narcotics Agents with Fred Drake's permission. In view of United States v. Jones, 369 F.2d 217, 220 (7th Cir. 1966), and United States v. Kountis, 350 F.2d 869, 870 (7th Cir. 1965), certiorari denied, 382 U.S. 980, 86 S.Ct. 554, 15 L.Ed.2d 470, defendant has not contended here that this eavesdropping was illegal.

In sum, we agree with the Government that the proof of defendant's guilt was compelling.

### "Inflammatory" Evidence

■ Defendant complains that testimony of the physical and mental effect of heroin on users should not have been admitted. However, this scanty testimony was elicited by the Government to establish that the powder in question was a narcotic, and the supposedly inflammatory portions of the testimony were elicited on cross-examination without any objection. Defendant's counsel even asked witness Collins some questions as to whether he was confused when "high".

■ Defendant also urges that the admission into evidence of powder purchased from Fred Drake and a set of scales obtained from an alleged co-conspirator should not have been received in evidence. These items were admitted by the experienced District Judge "solely for the purpose of showing the reason for the existence of the conspiracy" and the nature of the business. Since the evidence had already disclosed the purpose of the conspiracy and the nature of defendant's business, it was unnecessary and inadvisable to admit these visual aids. Nevertheless, in view of the strong evidence of guilt and the careful, limiting instruction, the admission of this evidence was not prejudicial.

### Defendant's Conviction Was Not Vitiated by Acquittal of John Capko and Jury Disagreement as to Walter Anderson.

■ The jury's acquittal verdict evinced its conclusion that defendant had not conspired with John Capko. Despite its disagreement with respect to Walter Anderson's guilt, the jury could have concluded that defendant conspired with some of the other nine co-conspirators named in Count One of the indictment and possibly with Walter Anderson. Certainly Fred Drake's testimony could cause the jury to conclude that he had conspired with defendant before becoming a Government informer. This is enough to support defendant's conviction. United States v. Gordon, 242 F.2d 122, 125 (3rd Cir. 1957), certiorari denied, 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1436.

### Entrapment

■ Defendant also urges that Fred Drake entrapped defendant. However, defendant admitted no criminal acts. In such a situation, it has been held that a defendant may not use the entrapment defense. Ortega v. United States, 348 F.2d 874, 876 (9th Cir. 1965); but cf. Hansford v. United States, 112 U.S.App. D.C. 359, 303 F.2d 219, 221 (1962). In any event, he did not make the requisite showing that he was unwilling to engage in this criminal activity. Lopez v. United States, 373 U.S. 427, 434–435, 83 S.Ct. 1381, 10 L.Ed.2d 462. Nothing in this record indicated his reluctance to become Fred Drake's heroin supplier. See United States v. Lauchli, 371 F.2d 303, 308 (7th Cir. 1966).

### Closing Argument Time

■■ Defendant next asserts that his counsel's time for final argument was unduly limited to 30 minutes. The Government had only been allotted 60 minutes, and the three defendants were allotted a total of 70 minutes. Counsel for the other defendants had 20 minutes

apiece and yet their clients were not convicted. We have read the closing argument of defendant's counsel. It does not appear that he needed more time. His brief does not show that there were important points that he wished to make but could not. In the absence of any showing of prejudice, the trial court's discretion in this regard will not be disturbed. Barnard v. United States, 342 F.2d 309, 321 (9th Cir. 1965), certiorari denied, 382 U.S. 948, 86 S.Ct. 403, 15 L. Ed.2d 356.

### Court's Instructions to the Jury

 Defendant next contends that the trial court should have instructed the jury that a conviction under Count One would carry a minimum sentence of five years. No authority is offered to support such an instruction. Although Rule 30 of the Federal Rules of Criminal Procedure requires that instructions must be tendered in writing, none was offered on this point. It is therefore our conclusion that none was required (United States v. Phillips, 375 F.2d 75, 80 (7th Cir. 1967)), especially since any prejudice in this respect was minimal. See Ryan v. United States, 99 F.2d 864, 873 (8th Cir. 1938), certiorari denied, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1037.

Although defendant now asserts that the District Court erred in instructing the jury that there is an assumption or presumption that a witness speaks the truth, at the oral argument his counsel admitted that he did not object to this instruction below, as required by Rule 30 of the Federal Rules of Criminal Procedure. No case has been cited in which the giving of this instruction was the basis of the reversal.[3] Even though it would be better practice to refrain from giving this instruction, the matter is not sufficiently important here to be considered as plain error under Rule 52(b) of the Federal Rules of Criminal Procedure.

*The Grand Jury Was Properly Empaneled.*

Defendant has not shown that the selection of grand jurors without announcing their names aloud resulted in any prejudice to him. In United States v. Hoffa, 367 F.2d 698, 710 (7th Cir. 1966), remanded, 387 U.S. 231, 87 S. Ct. 1583, 18 L.Ed.2d 738, this Court held that names of petit jurors need not be read aloud as they were called. At the argument, defendant's counsel conceded that the *Hoffa* opinion also controls as to the selection of grand jurors. Therefore, this contention must also be rejected.

Since we find no prejudicial error, the judgment of conviction is affirmed.

---

3. A like instruction was disapproved in United States v. Meisch, 370 F.2d 768, 773–774 (3d Cir. 1966), but the reversal was on other grounds.