961 F.2d 220
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Clark NEWTON and Joyce Newton, Plaintiffs-Appellees,
v.
ENERTECH, INC., an Illinois corporation; Challenger
Electrical Equipment Corp., a Delaware corporation and
successor corporation to Federal Pacific Electric Company,
a/k/a FPE; and Reliance Electric Industrial Company and/or
Reliance Electric Company, a Delaware corporation and
holding corporation for Federal Pacific Electric Company, a
Delaware corporation, Defendants,
Federal Pacific Electric Company, a Delaware corporation,
Defendant-Appellant.
Commercial Union Insurance Company, Inc., Intervenor.
 Nos. 91-6174, 91-6276.
 United States Court of Appeals, Tenth Circuit.
 April 6, 1992.
 
 Before JOHN P. MOORE and BRORBY, Circuit Judges, and HUNTER, District Judge.*
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This appeal arises from a successful manufacturers' product liability diversity action in which Clark Newton was seriously injured while working on an electrical substation manufactured by the Federal Pacific Electric Company (FPE). FPE contends the jury verdict should be reversed because Mr. Newton is not a member of the class of persons protected by the manufacturers' product liability doctrine. FPE also asserts a new trial should be granted because the district court abused its discretion in removing a sleeping juror. Finding no merit in these claims, we affirm.
 
 
 2
 Mr. Newton was engaged by Oberlin World Press to upgrade the power capacity of an electrical system Oberlin had purchased from FPE. The electrical system is divided into two substations which are connected electrically by a tie switch and a flat metal conductor, or "bus." Each substation is divided into cubicles numbered one through thirteen, with the tie switch and bus for substation 2 in cubicle number 4. The power upgrade requested by Oberlin required an 800-amp spare switch in cubicle 5 in substation 2 to be replaced by a 1200-amp switch.
 
 
 3
 Prior to entering cubicle 5, Mr. Newton de-energized substation 2 and assured there was no power in his cubicle. However, because of FPE's unusual system design, the link between the two substations was still "hot" and thus electricity could still enter substation 2. While working in the cubicle, Mr. Newton inadvertently touched a metal bar to the exposed tie bus in the adjacent cubicle and was seriously injured.
 
 
 4
 Mr. Newton brought an action for his personal injuries in which his wife, Joyce, joined for loss of consortium. In his claim, Mr. Newton alleged the tie switch and bus were negligently designed and thus were unreasonably dangerous to the ordinary electrician.
 
 
 5
 The jury awarded Clark Newton $1,455,600 and Joyce Newton $250,000. The trial court entered judgment against FPE and subsequently denied FPE's motions for a directed verdict, judgment n.o.v. and for a new trial.
 
 
 6
 FPE contends the trial court erred in denying its motions for a directed verdict and for judgment n.o.v. We only reverse a trial court's denial of either motion when, after a de novo review, we determine that the evidence taken in the light most favorable to the nonmoving party and all reasonable inferences to be drawn therefrom point but one way, in favor of the moving party. Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1416 (10th Cir.1990).
 
 
 7
 To establish manufacturers' product liability in Oklahoma, the plaintiff must prove three things. First, plaintiff must prove the product was the cause of the injury. Kirkland v. General Motors Corp., 521 P.2d 1353, 1363 (Okla.1974). If some act of the plaintiff caused the injury, rather than the defective product itself, causation is missing and the plaintiff cannot recover. Kirkland, 521 P.2d at 1366. Similarly, if the plaintiff is using the product for some purpose for which it was not intended ("abnormal use") and is subsequently injured, causation is lacking. Id.
 
 
 8
 Second, if the action is against the manufacturer, plaintiff must prove the defect existed in the product at the time the product left the manufacturer's possession and control. Id. at 1363. Third, plaintiff must prove the defect made the article "unreasonably dangerous" to him or his property. Id.
 
 
 9
 In Moss v. Polyco, Inc., 522 P.2d 622 (Okla.1974), decided on the same day as Kirkland, the Oklahoma Supreme Court recognized the doctrine of manufacturers' product liability should extend to any third person injured as a result of the defect in the product. "A manufacturer who places in commerce a product rendered dangerous to life or limb by reason of some defect is strictly liable in tort to one who sustains injury because of the defective condition." Moss, 522 P.2d at 626 (citations omitted).
 
 
 10
 FPE argues on appeal Mr. Newton is not within the class of plaintiffs protected by the manufacturers' product liability doctrine. FPE contends the power upgrade required Mr. Newton to redesign a portion of the substation. Because Mr. Newton was in the process of redesigning or "remanufacturing" the substation, FPE contends he is not a "user or consumer" of the substation and thus is not protected by the manufacturers' product liability doctrine. Thus, FPE asserts there was insufficient evidence for the jury to find Mr. Newton was a user of the substation.
 
 
 11
 However, upon careful review of the record, we conclude there was sufficient evidence to establish Mr. Newton was not engaged in substantially altering the substation. Not only was there credible testimony that power upgrades are commonplace, but also there was ample evidence establishing no modification or alteration of either the tie bus which caused the injury or cubicle 4, in which the tie bus was located. Given the fact that power upgrades had been performed previously in the Oberlin substation, and that FPE had advertised its substations as flexible for expansion and had even shipped sections to Oberlin equipped for 1200-amp switches, FPE could have reasonably foreseen the occurrence of a power upgrade on the substation.
 
 
 12
 FPE also moved for a new trial, claiming the trial court improperly replaced juror Johnson with an alternate juror in violation of Fed.R.Civ.P. 47(b). We review the trial court's denial for a "manifest abuse of discretion." Transpower Constructors v. Grand River, 905 F.2d at 1417 (citing Patty Precision Prods. Co. v. Brown & Sharpe Mfg. Co., 846 F.2d 1247, 1251 (10th Cir.1988)).
 
 
 13
 Rule 47(b) provides that alternate jurors "shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." The controlling question on review is whether the trial court's removal of a juror tended to weaken the institution of the jury trial. Metropolitan Paving Co. v. International Union of Operating Eng'rs, 439 F.2d 300, 304 (10th Cir.), cert. denied, 404 U.S. 829 (1971). The trial court has considerable discretion in deciding whether jurors are able to perform their duties. United States v. Ashby, 864 F.2d 690, 694 (10th Cir.1988), cert. denied, 494 U.S. 1070 (1990).
 
 
 14
 After both parties had exercised their peremptory challenges, the trial court stated juror Ketcham would be the alternate juror unless, at the end of the case, the parties agreed to substitute another juror as the alternate or unless the court determined that another juror should be substituted as the alternate. During trial, the court observed that juror Johnson was at times inattentive and sleeping. Before instructing the jury, the court asked each party to suggest an alternate juror. When the parties disagreed upon the choice, the court chose juror Johnson as the alternate, based on her inattentiveness during argument.[1]
 
 
 15
 The conduct of juror Johnson in open court is a matter of which the trial court had judicial knowledge and could take judicial notice. United States v. Carter, 433 F.2d 874, 876 (10th Cir.1970). There can be little doubt that a juror who sleeps throughout portions of a trial is unable to adequately perform his or her duties and that a court's dismissal of that juror is properly within its discretion. See, e.g., United States v. Cameron, 464 F.2d 333, 335 (3d Cir.1972). We have thoroughly examined the record, and we find no basis for setting aside the finding of the trial judge.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The Honorable Elmo B. Hunter, United States Senior District Court Judge for the Western District of Missouri, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The court just as easily could have disqualified Ms. Johnson and substituted Ms. Ketcham as the alternate. The difference is a matter of form and not substance